Good morning, Council. I'm sorry for the late start this morning. Mr. Eichner, please. Morning, Your Honors. My name is Andrew Eichner with the Council table. As my partner, Claudia Gallo, we're with the law firm of Berger Schatz, and we represent the respondent at Boulan, Theodore Ted Bellard. Council, would you raise the microphone so it's pointed a little bit further up? Absolutely. Thank you very much. No problem. Your Honors, this case, I think, can be broken down into three logical components on the appeal. The first is, do we have a contract? What's a contract form? Second is, if a contract is formed, can you understand it, and is it enforceable in that respect? And the third element is, if a contract has been formed and you can understand it, is it conscionable? And I want to address those points logically, and as we do in our brief. First is consideration. A contract at first-year law school, you have to have consideration to have a valid contract. It has to be a mutual release of rights, and generally, the consideration for a contract is recited in the contract. In this case, the first thing I want to say is that there is no specific recitation of consideration in the contract. It is not $10 paid in hand, and the word consideration is not used. Therefore, to define consideration, the court has to interpret the contract or take parole evidence. And I'll get to this in connection with the ambiguity, but the agreement is ambiguous on its face because no consideration is set forth. Well, weren't the parties having marital difficulties at the time? Counsel wasn't there. Testimony as to that, and also, didn't your client at one point have a pleading on file in which he indicated that they were contemplating separation? My client had a defense in terms to the contract that there was duress that was withdrawn at trial. The parties, their marital situation wasn't perfect, but this is not a situation where a party forbore a legal right in consideration of entering into the agreement. In fact, the testimony of the petitioner, which was uncontroverted, was that she did not intend to file. She had not gone there in her head. She hadn't consulted a lawyer, and she might file in a year or two. That testimony is uncontroverted, and that testimony is not sufficient to fall within the one case that, and I just, Tussbaum or Tobano, I can never pronounce. Pampason. I have a mental block because of that, so I apologize, Your Honor. Justice Goldman's case. Okay, that case, Judge, Your Honor, is completely different from this case, and I'll just tell you why it's self-evident. First of all, in that case, the consideration of forbearance was specifically identified in the contract. But what difference does that make now that you're on that? Well, because they intended that to be consideration. It was specifically set forth. Here, if they had intended that to be consideration, one would have thought they would have put it in the agreement. It is, to me, you cannot, that is not, if it is not recited, it's not consideration. But even if you want to go to the intent or what happened and contradict the agreement and supply what I would consider to be a critical term, and I think everyone on this Court would agree that consideration is a critical term, a material term in a contract, even if you're going to try to supply it, then you have to look at the facts. And the facts of Tuskbaum are completely different, again, not even considering that it was specifically recited in the agreement. There, the parties, the woman said she was definitely going to file for a divorce. The husband was cheating on her and lying to her, and it was a situation where she clearly had a basis and intended to file. The husband was lying and cheating on her, and she waived her right. She held off based on this post-nuptial. Here we have the petitioner saying, I'm not there in my head, I don't intend to file, and it's consistent with that not being set forth in the agreement as the consideration. Well, they didn't have lawyers drafting this, though. They drafted this agreement themselves, right? This is the best evidence, the best argument for Legal.com or LegalZoom or hiring a lawyer. You're right. They didn't do it, Judge, and they don't get a benefit for not having lawyers do it, that we make up terms for them because we kind of thought we maybe knew what they might have wanted. That's not a clause. Didn't she say to him, are we going to sign this agreement, go to counseling, begin to repair our marriage, or are we going to get a divorce because we can't agree on what would happen if we got a divorce? That's if they don't sign the agreement, correct? Right. That is not, I'm filing for a divorce if we don't get a prenuptial agreement. And now you have to take it with your entire testimony, which is clear. I don't intend to file. I had a gun near my head. I don't intend to file. I didn't see an attorney. I mean, I don't know what could be more clear and consistent with not referring to it in the agreement as opposed to the case of Tuscombe where she told them that, she testified to that, and it was in the agreement. Other than for a barraged civil lawsuit, what about Paragraph 5 that states that parties agree any increase in the value of the prenuptial property of either of them should be deemed marital property? Now, that's inconsistent, could be inconsistent with the act. You're right, and that's another problem. And that particular concept of agreeing on property values, how to treat them, why wouldn't that be consideration? Well, the trial court found that the forbearance was consideration, which was just discussed, and that this Paragraph 5, that one sentence, was a release of rights. That's what he found. And first of all, as Your Honor aptly pointed out, that might be consideration because it could be elusive. First of all, consideration can't be illusory. And as we all know, the increase of, let's say, a 401K may be marital anyways if income from the marriage, which under this agreement and the statute is treated as marital property, is deposited in there. So there may be no passive gains on her part. Therefore, this agreement could be illusory, A. And consideration has to be specific and not illusory. B, even more important, Judge, is that, and this is where we need to be. The concept of giving up a possible right relative to if it goes up, then it's important. Well, I see. If it doesn't go up, it could be unimportant. But that, if there is no increase, first of all, I don't believe a consideration has to be definite and material. It can't be a maybe. Okay? I'm going to give up something maybe. It's not consideration. That's not what it says. Well, that does what it says. Maybe there's an increase. There may not be an increase. But the right is given up. Well, a right that is never, an incoherent right, I do not believe, is sufficient. Because what might happen is, and I want to get to another point that I think is important with this, is that she may not have any increase that would be her non-marital property to begin with. So, therefore, she would not give up anything. You're right. Theoretically, if there was a passive, if she deposited, if it was a passive increase, it would be her non-marital property anyways. Well, we know that they had, the facts show that they had pre-marital property. Well, here's where we get into, this is where I. One had a condo. One had a house. IRAs, 401Ks, or whatever. This paragraph that the judge found was the consideration. This is where I, I analogize this case to Alice in Wonderland because it's all kind of made up. That paragraph only refers to retirement accounts. And as the court knows, having read the briefs and having read the testimony of Julia, what was on the balance sheet wasn't there at the time. It was completely made up. It was not accurate. It was fictional at the time they signed the agreement. So, if you read her testimony, and I could bury it out, but you'll have to just take my word on it that I've read the transcript. Her retirement account, which would be the instrument by which she would have gains or losses during the marriage, passive or otherwise, which is referred to as having a balance of $114,000 on her balance sheet, her testimony specifically, it wasn't there at the time they entered into this agreement. So, the vehicle by which her marital, it could have gone up or down, and that waiver of the rights in paragraph five, which just goes to retirement accounts, didn't even exist. That's the problem in this case, and goes into part two of my argument, is that it makes no sense. We have a completely fictional balance sheet. The assets that are on the balance sheet at the time they signed the agreement did not exist, and the values ascribed to them were not the values at the time they entered into the agreement, and that's not controverted. So, you're trying to enforce an agreement that is a balance sheet that essentially has no bearing on reality, and that is not controverted. When you use the word balance sheet, do you mean spreadsheet? The premarital net worth alleged of that exhibit A and B are not accurate. They do not reflect. No, it says illustrative. They're meant to illustrate the formula that is set out in the agreement. Isn't that what the parties said it was supposed to be? Well, let's look at that. Assume that's correct, Judge. Then we don't know what they had at the time. If it's illustrative and not real, then what did they have at the time they entered into this agreement, if that's illustrative? I'll take your word for it. Then you tell me A and B do not tell you what they have. It doesn't tell you what then credits or not they get. It's an illustration. It's a formula. It's a formula? Okay. What is the problem with having a formula? A formula, you have to know what the baselines are of the formula. If I have a formula that A plus B equals C, I have to know what A and B is to get to C. And in this case, we don't know what A and B is to get to C because everything on the exhibits are not real. Why do you not know what you're giving up is what you're saying? You don't know what you're giving up. You don't know what's divided up. You don't know whether there can be consideration. But I want to get past the consideration because I want to get to argument two. So the most essential element of a contract, consideration, is not in the agreement, either expressly or implicitly, in my opinion. But assume I'm wrong, that you find that this contract, like all the ones I've dealt with in 30 years of practicing law, that doesn't. It's the only one that doesn't recite the specific consideration for a dollar paid in hand, which is what you have to at a minimum do, is valid consideration. Now, let's go to can you understand it. Is the agreement ambiguous or not? And is it so ambiguous that it's incapable of enforcement? That's my point here, Judge, Your Honors, that this agreement is incapable of enforcement because it is ridiculous, makes no sense, has a fictional balance sheet, and is, as I said earlier, the best advertisement for why people who want to enter into these agreements should hire lawyers or at least get forms off the Internet at a minimum. This makes no sense. You would be enforcing an agreement that has a balance sheet that is acknowledged to be incorrect and completely fictional, where assets don't exist that are set forth on the agreement as existing, where you have formulas plugging in numbers that are fictional numbers, where you have statements in one paragraph that this is an equal partnership that takes into consideration the total contributions of the parties. And you have another paragraph that talks about some kind of putting the people back to where they belong, starting out, giving credits that don't exist. When I took this case, I looked at this and I said, I don't know what this means. This can't be enforceable. I don't even know. I read it four times. I'm not dumb. I've been practicing law for 30 years. If Your Honors can tell me specifically what it means in this case, notwithstanding that there's a fictional balance sheet and you don't know what you're dividing up, then I'll be told, and I will not prevail on this appeal, but I will tell you this, Your Honors, that my client did not proffer testimony of specifically how it works. The only testimony that was proffered was Ms. Boulard, and we'll get to that later on in conscionability, that somehow she would get the entire marital estate and my client's entire non-marital estate. Wasn't this the agreement, correct me if I'm wrong, that each of them had a specific amount of property pre-marital, and that part of the agreement was that if the marriage broke up, each of the parties would get what they had pre-marital. And then the second part of it was that if there were any marital gains or losses, then they would share those equally, and that was the basic two-part agreement. Okay, well, that might make sense if that's specifically what it said, but even let's take that. Now you have an agreement. That makes sense if the estate, and I'm just going to use simple math, had a million dollars between them at the beginning of the case. Now at the end of the case, they have $2 million. Well, maybe you could say they get their million back and divide the million, okay? But let's say there's $900,000. Who gets the first dollars back if there's a loss? And what this doesn't contemplate, and which it doesn't say, is what happened in this case, and that's why it doesn't, you can't apply. This is a case like you're trying to put a square peg in a round one and keep going and going, and it just doesn't work. Because what happened in this case is there's zero in the estate. So now you have the parties put in X dollars, because we don't know what they put in, and there's zero in the estate. Now I would ask your honor, because I can't figure it out, if they put in X dollars that we don't know how much, and now you have zero. Zero. Other than just walking away, how do you enforce this agreement when they have zero? What does it say you do? And that's what the judge said, and now I'm skipping ahead to the unconscionability. You're going to have to save that, however. Finish your sentence here, and certainly if Justice Bowman has a question, but you will have time on rebuttal. Oh, I didn't know I was out already. Okay, thank you. I have nothing further. All I want to say on that respect, Judge, is that you can't make this work. You can really try hard, but it doesn't make sense. Wouldn't that be the job of a trial court to determine how to apply this formula, if you will, even if the numbers aren't as easy as you submit a million to 2 million? So are you saying that if the numbers don't work, then such an agreement is not conscionable or is not practical, if you will? Well, first of all, it doesn't say what to do in that situation. Therefore, the court would have to make it up as it goes along. It doesn't say if there's zero in the estate what you do because it doesn't tell you how much you started with. And, B, the court would have to have an agreement that works that you can interpret and say this is what it says. The judge, with all due respect to Judge Anderson, didn't say that. He was given the facts. When he was asked to determine whether this agreement was valid, he'd have to make a determination that it was consideration. He didn't say whether it was ambiguous or not and that it was conscionable. And he didn't tell us. We asked him, what does the agreement mean? He had all the facts in front of him as to the estate at that time. It's not very complicated. This case should be settled in about two minutes in a normal world. But for this agreement, this is the lawyer's agreement, made them a ton of money. And he didn't tell us because he couldn't figure it out. I guarantee you, because if he could, he would have told us. Thank you, Counsel. Mr. Kenney? Good morning. Police Department. My name is Thomas Kenney. I represent Julia Borlaug, the petitioner and the appellee on the matter. Counsel correctly identified the three issues that are before you, Your Honors, this morning. That is the consideration, ambiguity, and unconscionability with respect to the party's postnuptial agreement. With respect to consideration, there may be an issue as to the standard of review. Counsel, in his brief, indicates that the standard of review is a de novo standard of review. I think the issue is maybe a little more complicated than that. Judge Anderson found that forbearance can be a valid consideration for a postnuptial agreement. That is a finding of law that is reviewed de novo. On the other hand, Judge Anderson also found that there was forbearance in this case and that the forbearance was for a reasonable period of time. That's an inquiry that requires, Your Honors, to review the evidence in the case and the findings of the trial court, and I believe that is reviewed under the manifest weight of the evidence standard. We believe, judges, that the court's finding with respect to forbearance and the reasonable length of the forbearance was absolutely consistent with the evidence, certainly not contrary to the evidence, and for that reason, that determination should be upheld. How do you address the counsel's contention that it was never your client's intent to get a divorce? So what did she forbear? I think that that argument is inconsistent with the evidence. Number one, that the parties into their marriage are having a discussion with respect to what happens in the event of a divorce and how they divide their property in the event of a divorce certainly is indicative that there is some trouble in paradise, number one. Number two, my client testified plainly that she said you're going to sign this agreement or, I'm paraphrasing, there's going to be a divorce. And so I think the argument is simply inconsistent with the evidence. And counsel really ignores the verified pleading filed by his own client, wherein his client said, you know, we were contemplating separation at the time of this divorce and when she asked me to sign the document, we were seriously considering separation. So it's our position that that argument is simply inconsistent with the facts. Why was that pleading withdrawn during the course of the proceedings? It was withdrawn because also... Or that section of it was withdrawn. Because Mr. Verlard at that hearing, prior hearing, was also making an argument with respect to duress and they chose to withdraw that particular defense. And so that's why they said they weren't going to pursue that particular, that allegation. How do you address his argument with respect to fictional numbers and, you know, the unknown view? Again, I think that the argument is inconsistent with the evidence in this case. And it goes to this issue of ambiguity. And, frankly, Judge Anderson had no issues whatsoever in defining the parties' intent here. Judge Anderson said, look, this agreement says that at the start of this marriage, and I'm rounding numbers, Mrs. Verlard had $600,000. Mr. Verlard had $300,000. This agreement provides that in the event of a divorce, irrespective of the nature of the assets at the time of the divorce, whether marital, non-marital, she gets $600,000, he gets $300,000. If there's excess, they split it. If there is a shortfall, if the marital estate is less than $900,000, let's say it's $800,000, 50% of that $100,000 difference comes off of my client's $600,000. The other 50% comes off of Mr. Verlard's $350,000. It's absolutely consistent with every provision of this postnuptial agreement, and there is no provision. It's inconsistent with that interpretation. And so to say that the numbers are fictional is really just inconsistent with the parties' own agreement, where they acknowledge that this is what she had at the time of the marriage, and this is what he had at the time of the marriage. Even if you assume that part of the contract language was ambiguous, and even though the court found it wasn't ambiguous as a practical matter, if it were ambiguous, it's up to the fact finder to determine the ambiguity. To resolve the ambiguity for certain. One party says right, one party says left, and we have to decide whether it's right or left. The fact finder does that. And, Your Honor, simply because the parties may not agree on its interpretation doesn't mean that it's ambiguous. Most certainly. And the trial court found no difficulty in ascertaining the parties. If I may, with respect to the consideration issue, the trial court did note that forbearance wasn't the only consideration in this case. It did specifically note, with respect to Paragraph 5 of the parties' agreement, that under that agreement, their non-marital properties, to the extent there are earnings on their non-marital properties, those earnings become marital. Now, that is pretty much inconsistent with Section 503 of the Illinois Marriage and Dissolution of Marriage Act, wherein the earnings on non-marital property remain non-marital in most cases. There are some exceptions, but in most cases. And so under Paragraph 5, there is truly a mutual release of rights. They have released rights, and that alone is sufficient consideration for this agreement. And so even if the forbearance issue didn't apply here, there's other independent consideration for this contract. Lastly, we have the issue of unconscionability. And our position is, once again, that the argument that the agreement is unconscionable is really inconsistent with the facts here. The fact of the matter is the parties agreed. They sat down at a table, and they said, look, you came in with $600, you came in with $300. When we're divorced, you're going to get your $600 back, you're going to get your $300 back, and we're going to split what's left. Is there anything unfair about that? I submit to your honors that it's not. It may be inconsistent with the Illinois Marriage and Dissolution of Marriage Act, but, you know, there's all sorts of applications under that act where the result is not particularly fair. It doesn't make it unconscionable. It just may not be fair. In this case, what they brought in back is, in our view, simply not unfair, and it wasn't unconscionable. Counsel says, well, you know, maybe, and I suppose this really goes to the issue of ambiguity, but what if the estate is $2 million? And, you know, I've given this some thought, and frankly, the parties have addressed that issue pretty well. If the estate is $2 million, whether it's marital, non-marital, she gets her six, he gets his three, they split the rest equally. If the estate is zero, let's take, for example, that everything is wiped out, they have nothing, then I think the agreement speaks to that issue, too, that we know that the estate has dropped from 900 to nothing. So we have $450,000 that comes off of my client's $600,000, and we have $450,000 that comes off of Mr.'s, and so under that result, assuming the estate is completely wiped out, there's no marital property, there's no non-marital property, Mr. pays my client $150,000 under the terms of the agreement. That's where it is. Is that unconscionable? I would submit to your honors it's not, especially given the fact that the house here, which seems to be a topic of concern, the house here was funded completely by my client's non-marital estate. Every dollar that went into that house came from my client's non-marital estate, and so when counsel argues in his brief that it's unfair that the only marital property here being the house would go to my client, that that makes it unconscionable, I would submit to your honors that that is simply not the case. Well, she gave the down payment for the house.  And the appellant urges us to follow Richardson and says, based on Richardson, that we should find that the situation here is similar and, therefore, find it unconscionable. Should we follow Richardson, and if not, why not? You should follow Richardson, absolutely you should follow Richardson, but the fact of the matter is that the outcome here isn't the same. This is not unconscionable. It's not an unconscionable result. Unless your honors have some questions, I have nothing else. Thank you. Mr. Eichner? Five minutes. Okay, I'll try to. To address unconscionability. Unconscionability, fine, Judge. Let's talk about it. No, you can address it if you want, but I would love for you to address it. I'm going to. I just want to make one point about forbearance, and that is that that's a slippery slope. It is very easy. In every case that is going to be before a court where there's a post-nuptial agreement, there will be a signing of the agreement and then a filing for divorce. And unless it's specifically stated that that forbearance is the consideration, in every case now, if you read it into a contract, that's going to be the consideration. Because I was thinking about it at the time. I wanted to file for divorce, and I signed this agreement. It's different than task by where it's in the agreement. You're entering into a very, very, you know, I know that the floodgates argument isn't in law school. They tell you you shouldn't use that, but I see that coming. If that's going to be consideration, forbearance for prosecuting a divorce, it should be specifically set forth, because then it's just going to be, because I waited. In every case, I signed it and I waited, or else it wouldn't be in divorce court. Let's go to unconscionability. Just look at what opposing counsel Mr. Kenney said. If there's zero, she gets everything, and then he owes her $170,000 or $150,000. So then you would be countenancing an agreement under their only interpretation proffered at the trial court, the evidence that was evidenced and reaffirmed here today. Now, if that's conscionable, 100% of the marital estate and 100% of his non-marital estate or a judgment against him for additional money, then there's no way you can reconcile that even with Richardson. In Richardson, I would remind you, the woman got 7.5% of the estate, and the court determined that to be unconscionable, and that was when she received $8 million in cash, $10,000 a month maintenance, a brand-new Mercedes-Benz in 1998 or whatever. But the estate in Richardson was much bigger and would have required her to get much more than she did. I mean, the comparison of what she got versus the size of the estate basically was found to be unconscionable. And if I could just add, I think the court in Richardson also looked at the length of the marriage as well as her active participation in the business. So we don't have those two factors. Right here, it's even better because you have a shorter marriage, and she's getting up and one part is getting 100% of the estate and all of his non-marital estate. I'm just saying to your honors, the size of the estate is relative. Zero is zero on a million-dollar estate, on a dollar estate, on a hundred-million-dollar estate. And I'm saying to you that when you look at unconscionability, your own cases say, look at the economic results. In that case, the woman has a million dollars a year and $10,000 a month. In this case, he has zero. All his non-marital, he's paying maintenance and child support. A zero has to be unconscionable if 7.5% is. How is it unconscionable that somebody gets back what they bring into the marriage? That can be under this circle. First, if there's nothing to get back and he has to give it from his non-marital property and he gets less than zero, which is not just a movie and a book title, but what would happen in this case, then that's unconscionable. Let's assume they had a million-two, okay? A million-two. At the end, pursuant to their formula, he would end up with 39% of the marital estate, let's say $470,000, and that would also mean he'd get 138% of his premarital contribution. What is unconscionable about that? If they had a million-two, how is that unconscionable? Unconscionable, right. If we're talking about a situation, Judge, that doesn't exist, you're right. If they had $10 million and each got half of it. But we'd never know. But we do know because under the testimony of the, when you look at the economic circumstances resulting from it, that's substantive unconscionability. And the testimony was uncontroverted by Ms. Boulard that at the time of the hearing, if it was enforced, she would get the entire marital estate, and he would owe her, depending on the value of his 401K, which is all non-marital, $170,000. That's unconscionable. And I want to just, the one thing I wanted to say as I stepped up here about, because I do these all the time, excuse me, in our firm, they come to me to draft post of premarital agreements. And in every agreement, the one party says, I don't want, I want to give them nothing. And I say, you can't do that. You have to, it would be unconscionable. You have to give enough so that it may not have to be fair, but it can't be unconscionable. Improvident, one-sided, and that no person honestly would accept. And I submit to your honor that if you find an agreement with a fictional balance sheet, where a man gets zero and gives all of his non-marital worth to his other side, I'm going to be drafting agreements that shut out one spouse or the other. And that's going to be not what the law is. At the time they signed this agreement, there was no knowledge that he was going to get zero. Correct? That may be true, your honor. They didn't know what they were doing, honestly. They didn't. And we should compensate that. Your honor shouldn't. That was my point. But you're right. They didn't know what they were doing. And they didn't know what their balance sheet was. And they didn't know how to do this. And what's come up is a mess that the court system has to deal with for a year and a half. And it ends up that nobody knows what they said. And we all know that what she gets is everything according to her interpretation. That can't be a valid agreement that this court compensates. A contract has to mean something, say something, and contain requisite elements to be valid. And this has none of it. And we're all trying to fight to figure out a way to do it. And it really just doesn't work. But here's my question. In looking at the question of whether or not it's fair or not fair, do we look at the process or do we look at the end result, the amount of money each of us gather don't get? You look at both, procedural and substantive. Procedural is how it was made. And I withdrew my claim of duress, so we're not claiming it was procedurally defective. We are claiming it's substantive. When you look at the economic circumstances arising from the, if the agreement was applied, that's exactly what the case is saying. If you look at that and you have the testimony and counsel's statement today, he gets zero, she gets 100%, and 100% of his non-marital. That's unconscionable under Richardson, under any stretch of the imagination. You could ask anyone on the street. Zero versus 100 is improvident and one-sided. It can't be more one-sided than 100 to zero and all of your non-marital. You would gut that language if you upheld this agreement. So for substantive due process, we only look at the end result because what you've been talking about primarily is the end result. Right. I'm saying, I'm saying I withdrew my defense of procedural. Procedural would be, procedural sometimes helps you figure out substantive. If I had a gun to my head and I got zero, that's, it helps prove it. But you can have one that is just so bad that even if a gun wasn't held to your head, this court doesn't enforce because the statute talks about unconscionability of agreements and the case law does. I didn't write those laws. So even if you knew what he was doing, you cannot, this court cannot uphold a contract if finds unconscionable, whether it's in a commercial setting and particularly in a divorce setting where the parties have a confidential fiduciary relationship to each other. So if you have a contract that is 99% procedurally okay and 1% not, and you happen to hit that 1% not so that, as in this case, your client gets nothing and the other person gets the bulk of the estate, then we have to find substantively unconscionable. Absolutely. I stand by my argument that I have not raised procedural unconscionability. I'm saying look at the economic circumstances. And to do that, look at the testimony of the uncontroverted testimony and look at the statements here today. 100% to zero plus all of his not, it's less than zero. He walks away with nothing, nothing. I mean that is substantively unconscionable. Whether he knew what he was doing or not, the court and for time immemorial relieves people of unconscionable agreements, particularly in a divorce field. That's the law and it's right in all the cases. Thank you. Thank you very much. At this time the court will take the matter under advisement and render a decision at due course. Court stands in recess. Thank you, Your Honor. Thank you.